UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

DIEGO FRANCO, on behalf of himself and others
similarly situated, et al.,

                                        Plaintiffs,

                        -against-

JUBILEE FIRST AVENUE CORP., et al.,

                                        Defendants.

---------------------------------------------------------------X

14-CV-07729 (SN)

<u>OPINION & ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 8/25/2016

SARAH NETBURN, United States Magistrate Judge:

Plaintiffs are a group of service employees who worked for the defendants at Jubilee restaurant on the Upper East Side of Manhattan between September 2008 and July 2014. Jubilee restaurant was first located on 54th Street ("Jubilee on 54th"). When that location closed, a second Jubilee restaurant opened on First Avenue and 53rd Street ("Jubilee on First"). Plaintiffs allege that defendants' compensation practices violate the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 650 *et seq.* ("NYLL"). The plaintiffs move for partial summary judgment. The motion is granted in part and denied in part.

## PROCEDURAL BACKGROUND

On September 24, 2014, the plaintiff, Diego Franco, brought this collective action against Jubilee First Avenue Corporation ("JFAC") and Ilda Araujo alleging claims for: (1) failure to pay statutory minimum wage, in violation of the FLSA and the NYLL; (2) unlawful deduction from gratuities, in violation of NYLL; (3) failure to provide proper notice of payment at the tip-credit rate, in violation of NYLL; (4) unlawful pay deductions, in violation of NYLL; and (5) failure to pay a "spread of hours" premium, in violation of NYLL. The plaintiff filed a first

amended complaint on December 12, 2014, joining Mustapha Babaci, Juan C. Juarez and Derli Juliana Pabon as plaintiffs. Additionally, the plaintiff added a claim alleging failure to pay overtime wages, in violation of the FLSA and NYLL, and retracted his claim for unlawful pay deductions under NYLL. In a second amended complaint filed on May 15, 2015, the plaintiffs joined Eric Macaire as a defendant.

The Court granted the plaintiffs' unopposed motion for conditional class certification on June 9, 2015. Subsequently, plaintiffs Yonnia Sebbag and Zakon Nouhou joined this action.

This motion followed.

## FACTUAL BACKGROUND

The following facts are undisputed except where otherwise indicated. Jubilee on 54th, a restaurant specializing in French cuisine, was operated by a corporation called Jubilee, Inc., from June 1994 until May 2012. Defendant Eric Macaire owned 100% of Jubilee, Inc. from the restaurant's opening until approximately 2002, when he transferred 40% of his stake to Pascal Petiteau. (SMF ¶¶ 37, 38; Macaire Dep. 12:5–16.) Around 2009, Macaire reacquired 100% ownership of Jubilee Inc. (SMF ¶ 39; Macaire Dep. 12:19–20.)

Throughout its 18 years of operation, Macaire had ultimate control of Jubilee, Inc. (SMF ¶ 41; Macaire Dep. 19:2–9; 48:11–15.), which included the authority to hire, fire and discipline employees at Jubilee on 54th. (SMF ¶¶ 44, 46; Macaire Dep. 19:13–15; 26:2–22.) For example, in 2012, he fired a bartender named Sebastian Gasse. (SMF ¶ 47). Macaire also determined employees' rates of pay and signed their paychecks. (SMF ¶¶ 54, 55; Macaire Dep. 49:20–50:19; 102:12–15.) From 2009 until the restaurant closed in 2012, he was solely responsible for hiring management employees at Jubilee on 54th. (SMF ¶ 44; Macaire Dep. 20:19–23.) As owner of the restaurant, he instructed managers regarding their supervisory duties. (SMF ¶ 48; Macaire Dep.

26:2–28:4.) Macaire supervised employees' conditions of employment and often met with wait

staff employees. (SMF ¶¶ 58, 59; Counter-SMF ¶¶ 58, 59.)

The parties dispute whether Defendant Ilda Araujo worked as the general manager or the

floor manager at Jubilee on 54th. The plaintiffs contend that Macaire promoted Araujo to General

Manager in 2009. (SMF ¶ 50; Macaire Dep. 21:10–25.) As general manager, Araujo allegedly

exercised authority to oversee payroll (SMF ¶ 96), supervise the wait staff, (SMF ¶¶ 72, 100),

interview prospective employees (SMF ¶¶ 73–80), and hire, promote and fire front of house

employees (SMF ¶¶ 81, 88–91, 99). In contrast, the defendants assert that Araujo worked only as

the floor manager at Jubilee on 54th and had no authority to hire, fire or promote employees.

(Counter-SMF ¶¶ 50, 70–73, 88, 146; Araujo Dep. 10:9–11.) They further contend that Araujo

handled the payroll subject to Macaire's oversight and supervision, (Counter-SMF ¶ 57), and that

when employees informed her of any issues with their paychecks, Araujo reported those

problems to Macaire. (Counter-SMF ¶ 98.)

In late 2011, Macaire, Araujo and Luc Holie collectively formed JFAC. (SMF ¶ 6;

Araujo Dep. 7:20–8:14.) In May 2012, Jubilee on 54th closed and Jubilee on First opened. (SMF

¶¶ 6, 7, 9.) Before the opening of Jubilee on First, Macaire sent an email on behalf of JFAC to

customers announcing that Jubilee on 54th was moving to a new location. (SMF ¶ 11.) Jubilee on

First offers substantially the same menu as the one that had been offered at Jubilee on 54th. (SMF

¶ 13; Macaire Dep. 43:5–15.) Some of the employees who previously were employed at Jubilee

on 54th continued to work at Jubilee on First, (SMF ¶ 16; Counter-SMF ¶ 16), including Jubilee

on 54th's chef, who became the sous-chef at Jubilee on First. (SMF ¶ 17; Counter-SMF ¶ 17.)

The phone number from Jubilee on 54th was also transferred to Jubilee on First. (SMF ¶ 20.)

Araujo holds a one-third ownership stake in JFAC, (SMF ¶ 111), and works as the general manager at Jubilee on First. (SMF ¶ 27; Araujo Dep. 13:4–6.) As general manager, she has the authority to hire, fire or discipline employees. (SMF ¶ 26.) She also supervises employees' conditions of employment. (Counter-SMF ¶ 58.) Employees who wish to take a day off or change their schedules must first receive her permission. (SMF ¶ 95; Counter-SMF ¶ 95.)

Macaire also has a one-third ownership stake in JFAC. (SMF ¶ 40.) Before Jubilee on First opened, he was in charge of the restaurant's renovations. (SMF ¶ 65; Macaire Dep. 63:3–7.) Together with Araujo and Holie, Macaire has control and authority of JFAC. (SMF ¶ 42.) The defendants dispute the plaintiffs' assertion that Macaire supervises employees' conditions of employment at Jubilee on First. (Counter-SMF ¶ 58). Both parties agree, however, that Macaire has the authority to set policies with respect to record keeping. (SMF ¶ 61; Counter SMF ¶ 61.)

The parties agree that at both restaurants, employees were always paid for a six-hour shift, regardless of how many hours they worked. (SMF ¶¶ 21–22; Counter-SMF ¶¶ 21–22.) Plaintiffs contend that employees were not compensated for any hours worked above six per shift. (SMF ¶¶ 21–22.) Defendants assert that "employees were paid for their exact number of hours if they worked for more than six hours during a shift." (Counter-SMF ¶¶ 21–22.)

At both Jubilee on 54th and Jubilee on First, tipped employees were paid pursuant to a tip credit. (SMF ¶¶ 28–29.) Macaire and Araujo were aware of the statutory minimum wage and overtime wage requirements, (SMF ¶¶ 64, 115; Araujo Dep. 59:9–13; Macaire Dep. 58:7–11), however, neither ever sought any legal advice regarding compensation practices. (SMF ¶¶ 31, 66, 113; Araujo Dep. 59:19–60:9; Macaire Dep. 60:25–61:23). Instead, they relied on advice from a payroll company. (SMF ¶¶ 68, 114; Counter-SMF ¶ 67; Araujo Dep. 59:19–60:9.)

At both Jubilee on 54th and Jubilee on First, all wait staff tips were pooled together and divided among tipped employees. (SMF ¶ 117.) This system, known as a "tip pool," included servers, busboys, runners and bartenders. (SMF ¶ 122.) Araujo participated in the tip pool at Jubilee on 54th. (Araujo Dep. 23:18–20.) The plaintiffs allege that the defendants required all tipped employees to participate in the tip pool. (SMF ¶ 119; Franco Decl. ¶ 7; Babaci Decl. ¶ 5.) They assert that when the plaintiffs began working at Jubilee on 54th, they were never asked whether they wanted to participate in the tip pool and never were given an opportunity to approve which other individuals participated. (SMF ¶ 120.)

The defendants contend that the tip pool was created voluntarily by the tipped employees. (Counter-SMF ¶¶ 119, 147–49.) They deny that employees were required to participate in the tip pool, or that they were never given an opportunity to opt-out. (Counter-SMF ¶ 119, 120.) The defendants also contend that all Jubilee on 54th employees were aware of Araujo's participation in the tip pool. (Counter-SMF ¶ 151.)

## LEGAL DISCUSSION

The plaintiffs move for summary judgment on the following grounds: (1) the individual liability of defendants Macaire and Araujo as employers under the FLSA and NYLL; (2) defendant JFAC's liability as a successor entity for wage-and-hour violations at Jubilee on 54th; (3) defendants' liability for NYLL violations at Jubilee on 54th for requiring tipped employees to share tips with Araujo; (4) defendants' liability at both restaurants for tip-credit damages for failure to provide notice as required by NYLL; (5) defendants' liability at both restaurants for failure to pay "spread of hours" wages under NYLL; (6) defendants' liability at both restaurants for violations of NYLL § 195; and (7) plaintiffs' entitlement to liquidated damages under both the FLSA and NYLL for violations at both restaurants.

In their opposition brief, defendants challenge the plaintiffs' entitlement to summary judgment only on the issues of: (1) defendants' liability for NYLL violations at Jubilee on 54th for requiring tipped employees to share tips with Araujo; (2) JFAC's liability as a successor entity under NYLL; and (3) plaintiffs' entitlement to liquidated damages.

## I.      Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. "Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving party. See Scott v. Harris, 550 U.S. 372, 378 (2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local Civil] Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Giannullo v. City of New York, 322 F.3d 139, 143 n.5 (2d Cir. 2003)). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). To create a disputed fact sufficient to deny summary judgment, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). "[R]ather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (internal citation and quotations omitted).

Because "summary judgment is a drastic device . . . [that] cuts off a party's right to present his case to a jury . . . the moving party bears a heavy burden of demonstrating the absence of any material issues of fact." Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999)) (citations and internal quotations omitted). "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co., 373 F.3d at 242. Additionally, "[a]n unopposed summary judgment motion may . . . fail where the

undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Id. at 244 (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)) (internal quotations omitted).

## II.     The Individual Liability of Defendants Eric Macaire and Ilda Araujo as Employers under the FLSA and NYLL

The plaintiffs argue that defendants Macaire and Araujo qualified as "employers" at both Jubilee on 54th and Jubilee on First, and therefore can be held individually liable under the FLSA and NYLL. Although defendants do not oppose the plaintiffs' motion, where they challenge the plaintiffs' tip pool claim, they also dispute several material facts related to Araujo's role and responsibilities at Jubilee on 54th.

### A.     Law Governing Employer Status

Under both the FLSA and NYLL, personal liability may be imposed on employers for wage and hour violations. Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003). Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)); see also Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) ("The [FLSA] statute is a remedial one, written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the national economy"); Ansoumana, 255 F. Supp. 2d at 192 (quoting Reich v. Circle C Invs., Inc., 998 F.2d 324, 329 (5th Cir. 1993) ("'[T]he FLSA's definition of employer is sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the

corporation vis-a-vis its employees.'"")). The Court of Appeals treats the term "employer" for FLSA purposes as a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141–42 (2d Cir. 2008).

In cases where the parties dispute whether an individual defendant qualifies as the plaintiff's employer, courts apply the "economic reality" test. See, e.g., Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 264–65 (S.D.N.Y. 2008); Raquer v. Café Buon Gusto Corp., 11 Civ. 7774 (PAE), 2012 WL 4494882, at *2 (S.D.N.Y. Sept. 28, 2012); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725 (DC), 2010 WL 4159391, at *7 (S.D.N.Y. Sept. 30, 2010). Under this test, originally set forth in Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465 (9th Cir. 1983), and established in this circuit in Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984), courts assess the following non-exclusive factors: whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" (the "Carter factors"). Zheng v. Liberty Apparel Co., 355 F.3d 61, 67 (2d Cir. 2003) ("Zheng I"). "These factors are not exclusive, and the plaintiff need not satisfy all of them to demonstrate that a particular defendant is an employer." Yu G. Ke, 595 F. Supp. 2d at 264 (citing Zheng I, 355 F.3d at 71). Employer status "does not require continuous monitoring of employees, looking over their shoulders at all times . . . . Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." RSR, 172 F.3d at 139 (quoting Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir. 1982)) (internal quotations omitted).

The economic realities test applies equally to supervisors and owners. See Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 463–64 (S.D.N.Y. 2015). "Nothing . . . in the FLSA itself requires an individual to have been personally complicit in FLSA violations; the broad remedial purposes behind the statute counsel against such a requirement." Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013). An owner or shareholder exercises operational control over employees, and therefore qualifies as an employer, "if his or her role within the company, and the decisions it entails, directly affect that nature or conditions of the employees' employment." Id. Evidence indicating "an individual's authority over management, supervision, and oversight of a company's affairs in general is relevant to the totality of circumstances in determining the individual's operational control of the company's employment of the plaintiff employees." Id. at 110 (quoting RSR, 172 F.3d at 140) (internal quotations omitted).

The definitions of "employer" are functionally identical under FLSA and the NYLL, and courts in this circuit use the same tests to determine "employer" status under both laws. See Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) (applying the "economic reality" test to FLSA and the NYLL but noting, "[t]o be sure, the New York Court of Appeals has not yet resolved whether the NYLL's standard for employer status is coextensive with the FLSA's, see Irizarry, 722 F.3d at 117, but there is no case law to the contrary"); Hernandez v. La Cazuela de Mari Rest., Inc., 538 F. Supp. 2d 528, 534–35 (E.D.N.Y. 2007) (citing Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005)).

The question of whether a defendant is a FLSA "employer" is a "mixed question of law and fact," involving "the application of a legal standard to a particular set of facts." Zheng v. Liberty Apparel Co. Inc. ("Zheng II"), 617 F.3d 182, 185 (2d Cir. 2010) (internal citations and quotations omitted). Only "the ultimate decision as to whether a party is an employer," is a legal

question. Zheng I, 355 F.3d at 76. The "historical findings of fact that underlie each of the relevant factors" and the "findings as to the existence and degree of each factor" are factual questions. Id. Although mixed questions of law and fact are particularly well-suited for jury determination, summary judgment may be granted where there are no disputes as to any genuine issue of material fact. See e.g., Jean–Louis v. Metro. Cable Commc'ns, Inc., 838 F. Supp. 2d 111, 119 n.4 (S.D.N.Y. 2011) ("[N]othing . . . casts doubt on the propriety of treating [employment status] as a question of law where there are no genuine issues of material fact requiring a jury trial.")

### B.    Analysis

#### 1.    Eric Macaire

The plaintiffs submit that Macaire was their employer at both restaurant locations and can be held individually liable as a matter of law.  They argue that summary judgment is appropriate because: (1) Macaire owned or operated part of both restaurants; (2) Macaire identified himself as "the boss" at Jubilee on 54th, and one of three bosses at Jubilee on First; (3) defendants admit that Macaire had the authority to hire, fire and discipline employees at both restaurants; (4) he was responsible for hiring and promoting managerial employees, signing employees' paychecks, and maintaining employment records at Jubilee on 54th; (5) Macaire assigned Araujo to handle payroll at Jubilee on 54th; and (6) he has the authority to set policies with respect to record-keeping and maintains employee records in an office in the restaurant at Jubilee on First. Defendants do not challenge these statements.

The undisputed evidence establishes that Macaire was an employer at Jubilee on 54th. Macaire testified that he had "ultimate control" over Jubilee on 54th, (Macaire Dep. 19:7–9), and referred to himself as "the boss." (SMF ¶ 51; Macaire Dep. 99:24–100:9.) Macaire was

responsible for hiring all managers at Jubilee on 54th from 2009 until the restaurant closed, (Macaire Dep. 20:12–21:24), and exercised power to fire employees. (SMF ¶ 47; Franco Decl. ¶ 45). When Macaire opened Jubilee on 54th, he made the decision to pay his hourly employees the statutory minimum wage, which remained their pay rate throughout the restaurant's years of operation. (Macaire Dep. 51:14–52:18.) Macaire also signed employees' paychecks. (SMF ¶ 55; 102:14–15.) Although the parties dispute Macaire's direct involvement in handling payroll records, the defendants assert that Araujo handled payroll "subject to Macaire's supervision." (Counter-SMF ¶ 57.) Furthermore, evidence of Macaire's authority over management, supervision, and oversight of the affairs at Jubilee on 54th establish that he exercised operational control over employees.

Although Macaire is decidedly less involved in the day-to-day operations at Jubilee on First, he nonetheless qualifies as an employer at the new restaurant. The first and third factors of the Carter test weigh in favor of finding that Macaire qualifies as an employer. Although Macaire admitted that he is not directly involved in staffing decisions, (Macaire Dep. 65:21–66:2); Araujo Dep 15:4–16:3), he retains the authority to hire and fire staff at Jubilee on First. (Macaire Dep. 66:20.) Macaire also stated that Araujo sought his approval for candidates she considered hiring for managerial positions within the restaurant. (Macaire Dep. 66:3–12.) Additionally, Macaire and his co-owners set the rates and methods of payment for employees at Jubilee on First. (Macaire Dep. 67:22–25.) While the chef has some discretion to determine the hourly rates of kitchen staff, the owners have the ultimate authority to override the chef's decisions if they determine that the kitchen employees' hourly rates are too high. (Macaire Dep. 68:11–15.)

The second and fourth factors, however, are not satisfied. Araujo—and not Macaire—exercises sole authority over the schedules of the front of house employees and all floor

managers report directly to her. (Araujo Dep. 15:14–16:21.) Furthermore, defendants assert that JFAC, rather than Macaire individually, retains the employment records for employees at Jubilee on First. (Counter-SMF ¶ 62.)

In regard to operational control, Macaire, Araujo and Holie share equal control over Jubilee on First, and Macaire retains the authority to veto his co-owners and managers' hiring decisions. Furthermore, Macaire said that he and his co-owners collectively decided to apply a tip credit to the wait staffs' wages and to follow their payroll company's advice concerning compliance with applicable wage-and-hour regulations.

Under a totality of circumstances analysis, Macaire exercises sufficient operational control over the conditions of employment at Jubilee on First to qualify as an employer. Plaintiffs' motion regarding Macaire's status as an employer at Jubilee on 54th and Jubilee on First is GRANTED.

### 2.    Ilda Araujo

The plaintiffs argue that as general manager at Jubilee on 54th and Jubilee on First, Araujo exercised authority to interview, hire, fire, schedule and discipline employees. At Jubilee on First, she was also involved in determining employees' rates of compensation and maintaining employment records. Although defendants did not directly oppose the plaintiffs' motion, they argue in a separate section of their opposition brief that Araujo did not qualify as an employer while she worked at Jubilee on 54th. They dispute the plaintiffs' contentions that, as a manager at Jubilee on 54th, Araujo had the authority to hire, fire and discipline employees, control employees' schedules and manage payroll.

There are disputed material facts regarding Araujo's role and responsibilities at Jubilee on 54th. Plaintiffs assert that Araujo was promoted from floor manager to general manager in

2009. (SMF ¶ 70.) They claim that as general manager, she supervised the wait staff, posted job listings for available positions, and had and exercised the authority to interview prospective employees. (SMF ¶¶ 72, 73, 85.) Plaintiffs also assert that Araujo had the authority to hire, fire and terminate employees without prior approval from Macaire. (SMF ¶¶ 81, 88.) They claim that she was responsible for scheduling employees and managing payroll. (SMF ¶¶ 92, 96.)

Defendants dispute the veracity of each of the plaintiffs' claims. They contend that in 2009 Araujo was promoted only to floor manager. (Counter SMF ¶ 70; Araujo Dep. 23:23.) They deny that Araujo interviewed and hired staff at Jubilee on 54th, (Counter SMF ¶¶ 73–82; Araujo Dep. 24:16–18), and contend that she posted job listings only at Macaire's request. (Counter SMF ¶ 85.) Defendants claim that she supervised wait staff in consultation with Macaire and other managers. (Counter SMF ¶¶ 72, 146; Araujo Dep. 25:3–14.) They also assert that employees' schedules remained unchanged since before 2009, when they had been set by a previous floor manager. (Counter SMF ¶ 92.) Defendants contend that Araujo managed the payroll subject to Macaire's supervision, (Counter SMF ¶ 57), and that she lacked the authority to discipline or fire employees. (Counter SMF ¶¶ 88, 93, 146; Araujo Dep. 24:16–21.)

Based on these disputes of material fact, the Court must view the facts in the light most favorable to the defendants to determine whether the plaintiffs are entitled to summary judgment. The first Carter factor test is not satisfied because defendants have presented evidence that Araujo lacked the authority to hire and fire employees. Likewise, under the third and fourth factors there is evidence that Araujo played no role in determining employees' rates of pay and did not have access to employees' payroll records.

There is conflicting evidence from Araujo herself regarding her role in scheduling wait staff employees: in her deposition, she testified that she set employees' schedules, (Araujo Dep.

24:14–15), but in a declaration accompanying defendants' opposition brief, Araujo stated that the employees worked off of a schedule that had been created before she began her position as floor manager. (Araujo Decl. ¶ 5.) Defendants cannot raise a genuine issue of material fact by introducing a declaration at the summary judgment stage that contradicts Araujo's prior testimony. See Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). Accordingly, the second Carter factor is satisfied.

Because plaintiffs only presented sufficient undisputed material facts to satisfy one prong of the Carter test, their motion for summary judgment on Araujo's status as an employer at Jubilee on 54th is DENIED.

There are, however, sufficient undisputed material facts to find that Araujo qualifies as an employer at Jubilee on First. As general manager, Araujo directly hires, fires and supervises front of house staff. (Araujo Dep. 13:5–24.) She is responsible for setting employees' work schedules and if employees seek to change their schedules, they are required to receive her approval. (SMF ¶ 95; Counter-SMF ¶ 95.) Additionally, Araujo, in conjunction with Holie and Macaire, determined the rates and methods of payment for all front of house employees. Finally, Araujo testified that she is responsible for keeping records of payment for the front of the house. (Araujo Dep. 14:4–8.) Because each of the Carter criteria are met, Araujo qualifies as an employer at Jubilee on First.

## III.   The Successor Liability of JFAC for Alleged Wage-and-Hour Violations at Jubilee on 54th

Plaintiffs argue that JFAC is liable for wage-and-hour violations at Jubilee on 54th under both the "traditional" common law and the "substantial continuity" tests. In opposition, the defendants challenge only the plaintiffs' claim for successor liability under the traditional common law standard.

The Court of Appeals for the Second Circuit has not established the proper test for successor liability in the FLSA context. See Battino v. Cornelia Fifth Ave., LLC, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012). Courts in this circuit have applied two different tests: the traditional "common law test," applied by New York state courts, and the "substantial continuity" test, used in the labor and employment context in federal courts. See Alvarez v. 40 Mulberry Rest., Inc., 11 Civ. 9107 (PAE), 2012 WL 4639154, at * 5 (S.D.N.Y. Oct. 3, 2012) (citing cases). Because summary judgment is appropriate under either standard, the Court need not decide which test applies to FLSA claims.

### A.    Traditional Test

Under New York law and traditional common law, "the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003). A successor corporation may, however, be held liable for the obligations of its predecessor if any of the following conditions are present: "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." New York v. Nat'l Serv. Indus., Inc. ("NSI"), 460 F.3d 201, 209 (2d. Cir. 2006) (quoting Schumacher v. Richards Sheer Co., 59 N.Y.2d 239, 245 (1983)).

Plaintiffs argue that JFAC is liable as Jubilee Inc.'s successor under either the de facto merger or the mere continuation exception. Courts in this circuit have held that the "de facto merger" and "mere continuation" exceptions are "so similar that they may be considered a single exception." Cargo Partner AG, 352 F.3d at 45 n.3 (citing cases); see also Battino, 861 F. Supp. 2d at 401 (applying the same test to de facto merger and continuity of ownership claims). To

determine whether a mere continuation or a de facto merger has occurred, courts consider the following factors: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets and general business operation." NSI, 460 F.3d at 209. These factors are to be "analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor." Nettis v. Levitt, 241 F.3d 186, 194 (2d Cir. 2001), overruled on other grounds, Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006) (internal quotations omitted).

Defendants argue that because there was no continuation of ownership between the restaurants, JFAC cannot be held liable for Jubilee Inc.'s liabilities. They contend that continuation of ownership is an essential element in the de facto merger test, citing to both federal and state cases in which courts have held that continuation of ownership is necessary to extend liability to a successor corporation. See Battino, 861 F. Supp. 2d at 401 (holding that successor liability did not apply where there was no continuation of ownership between two corporations); In re New York City Asbestos Litig., 15 A.D.3d 254, 256 (1st Dep't 2005) (noting that "continuity of ownership is the essence of a merger" and a "necessary element of any de facto merger finding"). Defendants also note that with the exception of some electronic equipment and other "insignificant intangible items," there was no carryover of equipment and tangible assets from Jubilee on 54th to Jubilee on First. (Def. Br.at 13.)

Plaintiffs argue that an identical ownership structure between Jubilee on 54th and Jubilee on First is not a necessary requirement for successor liability under the traditional common law

test. In support of this argument, they cite Miller v. Forge Mench Partnership Ltd., in which the court held that "nominal changes in the ownership structure of a corporate entity do not undermine the finding of a de facto merger." 00 Civ. 4314 (MBM), 2005 WL 267551, at *8 (S.D.N.Y. Feb. 2, 2005).

"[C]ontinuity of ownership is the essence of a merger." Cargo Partner AG, 352 F.3d at 47. But this continuity ownership may be imperfect, as long as there is at least partial commonality of ownership between the predecessor and successor organizations. See id. (citing Ladenburg Thalmann & Co., Inc. v. Tim's Amusements, Inc., 275 A.D.2d 243, 248 (1st Dep't 2000) (finding continuity of ownership where the parent corporation owned 20 percent of the predecessor corporation and 72 percent of the successor corporation)). Courts in this circuit have held that "the de facto merger test requires *continuity*, not uniformity, of ownership." Miller, 2005 WL 267551, at *8 (finding continuity of ownership where the successor was "owned by the same individuals who held shares in . . . the corporate partners of" the predecessor company) (emphasis in original).

Here, Macaire held a 100% ownership interest in Jubilee, Inc., and holds a one-third ownership interest in JFAC. Although two-thirds of JFAC is owned by Araujo and Holie, there is sufficient continuity of ownership to satisfy the first prong of the de facto merger inquiry. See Allen Morris Comm. Real Estate Servs. Co. v. Numismatic Collectors Guild, Inc., 90 Civ. 264 (SWK), 1993 WL 183771, at *2, 6 (S.D.N.Y. May 27, 1993) (holding that there was continuity of ownership where three co-owners of the predecessor company collectively owned 40 percent of the successor company, and the remaining 60 percent was owned by an unrelated investment holding company.)

The plaintiffs also have presented sufficient evidence to satisfy the second factor of the de facto merger test. Jubilee on 54th closed in May 2012, and approximately ten days later Jubilee on First opened for business. See NSI, 460 F.3d at 209 (noting that "cessation of ordinary business and dissolution of the acquired corporation as soon as possible" are "hallmarks" of a de facto merger). Although it is unclear whether Jubilee, Inc. actually has been legally dissolved, the evidence indicates that it is "at most a corporation shorn of its assets and has become, in essence, a shell." NYKCool A.B. v. Pac. Int'l Servs., Inc., 12 Civ. 5754 (LAK)(AJP), 2013 WL 1274561, at *13 (S.D.N.Y. Mar. 29, 2013), report and recommendation adopted by ECF No. 69 (June 14, 2013); see Societe Anonyme Dauphitex v. Schoenfelder Corp., 07 Civ. 487 (RWS), 2007 WL 3253592, at *4 (S.D.N.Y. Nov. 2, 2007) (finding that the second de facto merger requirement was met where the predecessor company had no income during the previous calendar year and had transferred its assets and goodwill to the successor).

The plaintiffs have failed to present any evidence that Jubilee on First assumed "liabilities ordinarily necessary for the uninterrupted continuation of [Jubilee on 54th's] business." NSI, 460 F.3d at 209. For example, they have not shown that Jubilee on First paid any of Jubilee on 54th's outstanding debts, or that the new restaurant assumed any of its supplier or employment contracts. The third factor, therefore, is not satisfied.

Finally, the plaintiffs have established that there was "continuity of management, personnel . . . assets and general business operation," NSI, 460 F.3d at 209, between Jubilee on 54th and Jubilee on First. Araujo, a former manager at Jubilee on 54th, now works as general manager at Jubilee on First. Several other staff members transferred to the new restaurant, including the chef. Jubilee on First serves substantially the same menu as the one that was offered at Jubilee on 54th. Shortly before the closing of Jubilee on 54th, Macaire sent an email to

customers informing them that the restaurant soon would be moving to a new location. Jubilee on First uses the same phone number as Jubilee on 54th, and its website markets the restaurant as "Sutton Place's favorite kitchen for the past 21 years." (SMF ¶ 14.) Finally, Macaire testified that certain assets from Jubilee on 54th were transferred to the new location, including refrigerators, computers, monitors, lights, sconces, and forks and knives. Because the de facto merger test "requires continuity of general business operations, [ ] not complete identity or uniformity in every material characteristic," the plaintiffs have satisfied the fourth factor. Miller, 2005 WL 267551, at *11 (internal citation and quotations omitted).

Because it is clear that it was the intent of JFAC to absorb and continue the operations of Jubilee, Inc., the plaintiffs have established successor liability under the "traditional" common law test.

### B.     Substantial Continuity Test

The substantial continuity test is more flexible than the traditional common law test, and "focus[es] on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Fall River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 43 (1987). The inquiry is "primarily factual in nature" and based on the totality of circumstances. Id. Courts applying the substantial continuity test generally look to nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether [it] uses the same or substantially the same work force; (6) whether [it] uses the same or substantially the same working conditions; (8) whether [it] uses the same machinery, equipment, and methods of production; and (9) whether [it] produces the same product.

Bautista v. Beyond Thai Kitchen, Inc., 14 Civ. 4335 (LGS), 2015 WL 5459737, at *5 (S.D.N.Y.
Sept. 17, 2015) (quoting Musikiwamba v. ESSI, Inc., 760 F.2d 740, 750 (6th Cir. 1985)). "No
one factor is controlling, and it is not necessary that each factor be met to find successor
liability." E.E.O.C. v. Barney Skanska Const. Co., 99 Civ 2001 (DC), 2000 WL 1617008, at *2
(S.D.N.Y. Oct. 27, 2000).

Plaintiffs argue that JFAC was on notice of the potential claims because employees had
previously complained to Araujo that they were entitled to receive overtime payments. (SMF ¶¶
133, 144.) Defendants, however, dispute these claims in their entirety. Accordingly, plaintiffs
cannot establish that JFAC was on notice of potential claims against Jubilee, Inc.

The remaining factors, however, weigh in favor of assigning successor liability to JFAC.
Jubilee, Inc. is no longer able to provide the relief requested to the plaintiffs because the
company is no longer in operation. As discussed above, there is ample evidence of substantial
continuity of Jubilee, Inc.'s business after its closure. Based on a totality of circumstances
analysis, summary judgment on the issue of successor liability is appropriate.

## IV.     Araujo's Participation in the Tip Pool at Jubilee on 54th

Plaintiffs argue that defendants violated NYLL § 196-d when they required tipped
employees at Jubilee on 54th to share their tips with Araujo. In opposition to the plaintiffs'
summary judgment motion, the defendants argue that NYLL §196-d does not apply to this action
because the tip pool was not employer-mandated. Furthermore, they contend that even if the
Court determines that §196-d does apply, there was no violation because Araujo did not qualify
as an employer for the purposes of NYLL during the relevant time period.

New York law prohibits employers from requiring tipped employees to share their
gratuities with non-service employees or managers. NYLL §196-d provides:

> No employer or his agent or an officer of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or any charge purported to be a gratuity for an employee. . . . Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee.

"By its plain terms, §196-d bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service—i.e., employees who are not busboys or similar employees and employees who are managers or agents of the employer." Shahriar v. Smith & Wollensky Rest. Grp., 659 F.3d 234, 240 (2d. Cir. 2011) (internal quotations omitted). "Tip eligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental." Id. at 246 (quoting 12 NYCRR § 146–2.14(e) (2011)) (internal punctuation omitted). Employees who "exercise a limited degree of supervisory responsibility" may remain tip-pool eligible if they "regularly provide direct service to patrons." Barenboim v. Starbucks, Corp., 21 N.Y.3d 460, 472 (2013). In contrast, employees who exercise "meaningful or significant authority or control over subordinates" are not eligible to participate in an employer-mandated tip pool. Id. at 473. "Meaningful authority" includes the ability to discipline subordinates, assist in performance evaluations, participate in the process of hiring or firing employees, and set employees' work schedules. Id.

While § 196-d applies only to "employer-mandated" tip pooling, for a pool to be voluntary "it must be 'undertaken by employees on a completely voluntary basis and may not be mandated or initiated by employers,' and an employer can take 'no part in the organization or the conduct of the tip-pool.'" Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 125 (S.D.N.Y. 2014) (internal citations omitted); Diaz v. Amedeo Hotels LP, 12 Civ. 4418 (JMA), 2016 WL 1254243,

at *7 (E.D.N.Y. Mar. 29, 2016) ("the relevant regulations promulgated by the New York
Department of Labor treat employer-mandated tip-pooling differently, in certain respects, than
voluntary tip-pooling.").

Plaintiffs Franco and Babaci both assert that they were never asked whether they wanted
to be included in the tip pool, and were never given an opportunity to approve which other
individuals participated in the tip pool. Defendants, however, claim that participation in the tip
pool was voluntary. In support of this claim, defendants submitted declarations from Araujo and
former Jubilee on 54th busboy Nasir Uddin, both of whom assert that employees at Jubilee on
54th initiated and managed the tip pool themselves. (Araujo Decl. ¶ 18; Uddin Decl. ¶ 3.) The
plaintiffs argue that Araujo and Uddin's statements are "too vague and nonspecific" to create a
genuine dispute of fact precluding summary judgment in favor of the plaintiffs. (Pls.' Reply Br.
at 4.) They also argue that the statements in these declarations apply only to "cash" tip pools, and
that defendants have failed to offer any evidence to support a finding of voluntariness in the
creation of a tip pool for credit card tips.

Uddin offered the following assertions regarding the tip pool at Jubilee on 54th:

> The employees at both restaurants agreed among themselves to
> create the tip pool and to participate in the tip pool. . . . As agreed
> by all employees, all cash tips received by all waiters is placed in a
> box in a daily basis. The cash tips are then split amongst the
> employees on the basis of a formula which was agreed upon by all
> employees. None of the Defendants has anything to do with the tip
> pool . . . and have nothing to do with the distribution of cash tips. . . .
> All employees were aware of [Araujo's] participation in the tip pool.

Uddin Decl. ¶¶ 3–5. The plaintiffs contend that Uddin's statement is conclusory because he fails
to specify when the employees agreed to create a tip pool, the names of the employees involved
in that decision, and whether that group included any managerial employees. Notably, however,
the only evidence provided by the plaintiffs related to the nature and structure of the tip pool are

declarations from Franco and Babaci, both of whom merely state that: the defendants required the tipped employees at Jubilee on 54th to participate in the tip pool; they were never asked whether they wanted to participate in the tip pool and were never given an opportunity to approve which other individuals participated; the tip pool was already in place before their employment at Jubilee on 54th; the restaurant management controlled the tip-pool; and the tip pool also included Araujo. (Franco Decl. ¶¶ 7–9, 11; Babaci Decl. ¶¶ 5–8.)

The declarations submitted by Araujo and Uddin do not rely on "conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). Instead, they contain the recollections of two former Jubilee, Inc. employees regarding the creation and nature of the restaurant's tip pool. These statements are similar in form and substance to the statements that the plaintiffs offer in support of their motion and create a genuine issue of material fact. Because "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996), the plaintiffs' motion for summary judgment on whether defendants violated NYLL § 196-d is DENIED.

## V. Defendants' Compliance with the Tip Credit Minimum Wage Requirements

Under both the FLSA and NYLL, employers may pay tipped restaurant employees less than the minimum wage by crediting a portion of the actual amount of tips received by the employee against the hourly minimum wage. See 29 U.S.C. § 203(m); NYLL § 146-1.3(b). In order to qualify for this "tip credit," employees must comply with certain notice requirements.

Before January 1, 2011, under the NYLL, an employer could "credit a portion of an employee's tips and the costs of meals as allowances against the minimum wage requirement when certain preconditions [were] met." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d

253, 290 (S.D.N.Y. 2011) (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y.

2009); 12 NYCRR § 137–2.1, 2.2 (former)). New York state required employers to provide a tip

notice in three ways: "(1) by posting a notice at the workplace summarizing minimum wage

provisions; (2) by furnishing employees a statement with each paycheck listing allowances

claimed as part of the tip credit; and (3) by maintaining weekly payroll records showing the

allowances claimed." Cuzco v. F & J Steaks 37th St. LLC, 13 Civ. 1859 (PAC), 2014 WL

2210615, at *2 (S.D.N.Y. May 28, 2014) (internal citations omitted). Plaintiffs argue that

defendants were not eligible to take the tip credit because they failed to provide the plaintiffs

with proper notice as required by New York law. The defendants do not contest the plaintiffs'

motion for summary judgment on this issue.

The record shows that before January 1, 2011, the plaintiffs' paycheck stubs included the

rate of pay, pay period, hours worked, deductions, withholdings, gross earnings and net pay.

(Pls.' Br. Ex. 4.) The stubs did not, however, include the "allowances claimed as part of the

minimum wage," making the stubs "insufficient for an employer to receive the tip credit under

the Labor Law prior to January 1, 2011." Sai Qin Chen v. E. Mkt. Rest., Inc., 13 Civ. 3902

(HBP), 2015 WL 5730014, at *5–6 (S.D.N.Y. Sept. 30, 2015); see also Copantitla, 788 F. Supp.

2d at 290 ("Both the pay statements and the payroll records show only that plaintiffs earned tip-

related income; they do not record that any of the tip income was claimed as part of the

minimum wage. Accordingly, defendants have failed to meet this requirement of claiming a 'tip

allowance' under New York law."). The plaintiffs' motion for summary judgment for

defendants' failure to provided adequate notice of the tip credit minimum wage before January 1,

2011, is therefore GRANTED.

Since January 1, 2011, New York Labor Law has permitted employers to "take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146–2.2." 12 NYCRR § 146–1.3. Pursuant to Section 146–2.2, employers qualify for the tip credit only if they provide employees with written notice stating: (1) "the amount of tip credit . . . to be taken from the basic minimum hourly rate," and (2) that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 NYCRR § 146–2.2(a). The written notice must be provided in English and in any other language spoken by the employee as their primary language, and the employer must retain an acknowledgment of receipt of such notice, signed by the employee, for at least six years. 12 NYCRR § 146–2.2(a), (c).

The plaintiffs concede that the New York Department of Labor (NYDOL), as well as at least one other court in this district, has interpreted 12 NYCRR §§ 146–1.3 and 2.2 to permit employers lawfully to claim the tip credit if they can prove that their employees understood that they were being paid pursuant to the tip credit minimum wage. According to a letter issued by the NYDOL, "a food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules[,] provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit." Carvente-Avila v. Chaya Mushkah Rest. Corp., 12 Civ. 5359 (KBF), 2016 WL 3221141, at *1 (S.D.N.Y. Mar. 1, 2016) (quoting Mar. 4, 2015 NYDOL Letter Re: 12 NYCRR §§ 145–1.3 and 146–2.2 ("NYDOL Letter")). The rationale behind this statement is threefold: (1) the plain language of § 146–1.3 does not require written notice; (2) the "need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers," creating a windfall for

employees; and (3) the penalties for not complying with the written notice requirement are sufficiently high to already deter employers. Carvente-Avila, 2016 WL 3221141, at *2 (citing NYDOL Letter). In Carvente-Avila, the court held that the statutory interpretation expressed in the NYDOL Letter was entitled to deference because it does not contravene the "regulatory and statutory scheme" of New York's other labor regulations. Id. at *2 (quoting Fishkill Health Related Facility by Kasin v. Whalen, 464 N.Y.S.2d 580, 582 (3d Dep't 1983)).

Because the defendants have not challenged the plaintiffs' motion for summary judgment on the issue of failure to provide notice under 12 NYCRR § 146–2.2(a), they have waived any arguments regarding the applicability of the NYDOL letter to this case. Furthermore, the defendants admit that they failed to provide plaintiffs with written notice of their election to take the tip credit. (SMF ¶¶ 129, 138; Araujo Dep. 53:15–54:5) Accordingly, the plaintiffs' motion for summary judgment for failure to provide tip credit notice after January 1, 2011, is also GRANTED, and the plaintiffs are entitled to compensation at the minimum wage rate of pay.

## VI.    Defendants' Compliance with the Wage Theft Prevention Act

Plaintiffs argue that they are entitled to summary judgment for the defendants' violations of § 195(1) and 195(3) of the Wage Theft Prevention Act (WTPA). The defendants do not oppose the plaintiffs' motion.

### A.    NYLL § 195(1)

Since April 9, 2011, NYLL § 195(1) has required that, at the time of hiring and annually through December 28, 2014, employees be notified of:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by

27

> the employer; the physical address of the employer's main office or
> principal place of business, and a mailing address if different; the
> telephone number of the employer; plus such other information as
> the commissioner deems material and necessary.

NYLL § 195(1)(a). Additionally, for non-exempt employees, the notice must state the regular

hourly rate and overtime rate of pay. Id. "An employee who does not receive a wage notice

within 10 business days of his first day of employment is entitled to recover $50 for each week

of work that the violations occurred, up to a maximum of $2,500." Hernandez v. Jrpac Inc., 14

Civ. 4176 (PAE), 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016) (noting that 2014 N.Y.

Sess. Laws. Ch. 537 amended NYLL § 195(1-b) to allow for $50 per day up to a maximum

penalty of $5,000). The defendants admit that they never provided the plaintiffs with written

wage notices. (SMF ¶ 36; Counter-SMF ¶ 36.)

Employees who began working before the WTPA took effect on April 9, 2011, however,

are not entitled to bring a claim for an employer's failure to provide notice as required under

NYLL § 195(1)(a). See Canelas v. A'Mangiare Inc., 13 Civ. 3630 (VB), 2015 WL 2330476, at

*5 (S.D.N.Y. May 14, 2015) (some plaintiffs could not collect damages under § (a) because they

began working at the defendant restaurants before April 9, 2011); Guan Ming Lin v. Benihana

N.Y. Corp., 10 Civ. 1335 (RA)(JCF), 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012), report

and recommendation adopted by, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) ("only employees

who did not receive proper wage and hour notice at the time of hiring can sue for penalty

pursuant to § 198(1-b)").

According to the plaintiffs' Second Amended Complaint, all of the plaintiffs were hired

by Jubilee, Inc. before April 9, 2011. There is a dispute regarding the dates of Franco's

employment: plaintiffs contend that he worked for defendants from April 2005 until July 2014,

(SMF ¶ 125), but defendants assert that he was not continuously employed during this time

period. (Counter-SMF ¶ 125.) In her declaration, Araujo states that Franco was hired by JFAC shortly after Jubilee on First opened in 2012. Because there is a genuine issue of material fact regarding Franco's dates of employment, the Court DENIES plaintiffs' motion for summary judgment on Franco's wage notice claims. The Court sua sponte grants summary judgment in favor of defendants on all other plaintiffs' § 195(1)(a) claims.

### B.    NYLL § 195(3)

The plaintiffs also seek summary judgement on their claim that, beginning April 9, 2011, defendants failed to provide them with written wage statements as required by NYLL § 195(3). "The WTPA also obligates an employer to furnish each employee with a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." Caneles, 2015 WL 2330476, at *5. Between April 9, 2011, and February 26, 2015, Section 195(3) allowed employees to recover $100 per workweek, as statutory damages for violations of the wage statement requirement, not to exceed $2,500. See Inclan v. N.Y. Hosp. Grp., 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (citing NYLL § 198(1-d)). "[A]s with the WTPA's wage notice provision, an employee may not recover for wage statement violations that occurred before April 9, 2011." Caneles, 2015 WL 2330476, at *5.

Plaintiffs' pay stubs list "TIPS" and "CASH/CRTPS," but do not reflect that the tips were used as an allowance credited toward the plaintiffs' minimum wage. (Pls.' Br. Ex. 5.) Section 195(3) "has been interpreted to require a wage statement to expressly identify the per-hour amount of a tip credit and the total amount of the tip-credit allowance." Khereed v. W. 12th St. Rest. Grp., 15 Civ. 1363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016) (citing Inclan, 95 F. Supp. 3d at 502; Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 475 (S.D.N.Y.

2015)). Because the wage statements do not accurately reflect that the tips were taken as part of the allowance claimed toward the minimum wage, plaintiffs are entitled to summary judgement for defendants' failure to provide adequate wage statements beginning April 9, 2011, and the Court will award appropriate statutory damages.

## VII.   Defendants' Compliance with New York's Spread of Hours Pay Requirement

Under New York law, an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." 12 NYCRR § 142–2.4. "Spread of hours" is defined as "the length of the interval between the beginning and end of the employee's workday [and] includes working time plus time off for meals plus intervals off duty." NYCRR § 146–1.6. Simply stated, employers must "pay employees an extra hour's pay at the minimum wage when their workday lasts longer than ten hours." Shahriar, 659 F.3d at 242 n.4.

Plaintiffs argue they are entitled for summary judgment on their claim that defendants never paid any of their employees spread of hours pay. In support of their motion, they provided the Court with two weekly work schedules on which Franco was scheduled to work double shifts. (Pls.' Br., Ex. 6.) Each shift purported to cover six hours. (See Counter-SMF ¶¶ 21–22.) The plaintiffs also provided the Court with a copy of Franco's corresponding wage statements, which appear to reflect that he did not receive spread of hours pay. (Pls.' Br., Ex. 7.) Furthermore, Franco and Babaci both stated that their workdays "frequently lasted longer than ten hours," (SMF ¶¶ 131, 140), and that "on those occasions, Defendants never paid [them] an extra hour's pay." (SMF ¶¶ 132, 141). The defendants deny these assertions, (Counter-SMF ¶¶ 131, 132, 140, 141), but have failed to direct the Court to any evidence indicating that the

plaintiffs received spread of hours pay. Additionally, defendants do not challenge the plaintiffs'
summary judgment motion for defendants' failure to pay spread of hours.

Because defendants have failed to present evidence indicating that employees did, in fact,
receive an extra hour's pay on days when they worked ten hours or more, the plaintiffs' motion
is GRANTED. To the extent that the plaintiffs can prove at trial that there were days when they
worked ten hours or more, the Court will award spread-of-hours damages.

## VIII.   Plaintiffs' Entitlement to Liquidated Damages

### A.      FLSA Liquidated Damages

Although plaintiffs concede that the issue of "willfulness" is a fact question for the jury,[1]
they move for summary judgment on their right to liquidated damages based on defendants' lack
of good faith attempts to comply with the dictates of FLSA and the NYLL. Under §16(c) of the
FLSA, 29 U.S.C. § 216(b), an employer who violates the minimum compensation provisions of
the FLSA is liable for both past due wages and, in addition, an equal amount of liquidated
damages. The court, however, has "discretion to deny liquidated damages where the employer
shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with
objectively 'reasonable grounds' for believing that its acts or omissions did not violate the
FLSA." Barfield, 537 F.3d at 150 (quoting 29 U.S.C. § 260). "To establish the requisite
subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates
of the FLSA and then act to comply with them.'" Id. (quoting RSR, 172 F.3d at 142).
Furthermore, the purpose of the employer's "active step" must have been to "ascertain the

---

[1] "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of
whether is conduct was prohibited by the Act." Kueber v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011)
(quoting Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009)). In order to extend the statute of
limitation for FLSA violations from two years to three, the plaintiffs have the burden of showing that the
defendants' violations of the Act were "willful," and not just negligent or unreasonable. Id.

dictates of the FLSA with the respect to the [wage and hour] issue at hand." Id. at 151. "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages being the exception." RSR, 172 F.3d at 142.

Plaintiffs allege that defendants failed to pay them the federal minimum wage, to pay them at the overtime rate for hours worked in excess of 40 per work week, and to keep adequate records as required by the FLSA. They argue that defendants' reliance on the advice of their payroll company was "not sufficient to establish objective good faith." (Pls.' Br. at 24). In support of this argument, plaintiffs cite cases in which other courts in this district have held that defendants failed to establish good faith despite claims that they had consulted their accountants regarding the legality of their pay practices. See Garcia v. JonJon Deli Grocery Corp., 13 Civ. 8835 (AT), 2015 WL 4940107, at *6 (S.D.N.Y. Aug. 11, 2015) ("[E]ven assuming there was subjective good faith on Defendants' part, Defendants do not point to any misleading advice tendered by either the accountant or another professional that could support their claim of objectively reasonable grounds for Defendants' violations"); Copantitla, 788 F. Supp. 2d at 316–17 ("Even though [Defendant's] consultation with an accountant constitutes an 'active step,' 'its purpose was plainly not to ascertain the dictates of the FLSA with respect to the issues at hand,' namely the prerequisites for taking a 'tip credit' under the FLSA and the calculation of overtime wages" (citing Barfield, 537 F.3d at 151)).

Defendants argue that they are entitled to the good faith exception to liquidated damages because they sought and relied on advice from their payroll company regarding applicable federal and state employment regulations. They contend that they took "active, good faith steps to ascertain from their payroll company whether or not they were properly compensating their

32

employees and making sure that those employees had actual notice that they would be receiving

a reduced minimum wage together with tips." (Defs.' Br. at 7.) Defendants argue that because

JFAC is a small company owned by "not sophisticated business operators," (id. at 8), the Court

should hold defendants to a less stringent standard than it would apply to a larger, more

sophisticated employer. Defendants also contend that they were misled by their payroll company

regarding the type of notice they were required to provide to their employees under the FLSA

and NYLL.

      Viewing the record in the light most favorable to defendants, there is a triable issue of

fact regarding whether defendants acted in good faith and took active steps to ascertain the

dictates of the FLSA with respect to these issues. As an initial matter, the plaintiffs have not

argued that, as a matter of law, the defendants violated the FLSA with respect to the tip-credit

pay. Pursuant to the FLSA, an employer may pay employees at the tip credit rate if (1) the tipped

employee "has been informed by the employer of the provisions of [29 U.S.C. § 203(m)]" and

(2) "all tips received by such employee have been retained by the employee, except that this

subsection shall not be construed to prohibit the pooling of tips among employees who

customarily and regularly receive tips." 29 U.S.C. § 203(m)(2); see Chung v. New Silver Palace

Rest., Inc., 246 F. Supp. 2d 220, 228 (S.D.N.Y. 2002). Defendants have presented evidence that

Araujo verbally informed all employees that they would be paid at the tip-credit rate, and the

FLSA has no requirement that employees also receive written notice of the tip-credit election.

Defendants also have presented evidence that while working at Jubilee on 54th, Araujo qualified

as an employee "who customarily and regularly receive[d] tips." If defendants prevail on these

facts at trial, plaintiffs' FLSA minimum wage claims would be defeated.

The Court also rejects the plaintiffs' argument that to establish good faith, defendants are required to solicit advice from their attorney or accountant on each *specific* area of federal wage law that could apply to their employees. Pursuant to the Act, in order to avoid liquidated damages, an employer must show that it "acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." Barfield, 537 F.3d at 150 (quoting 20 U.S.C. § 216(b)). Whether an employer undertook "objectively reasonable" steps to comply with the FLSA is a factual issue that depends on several factors, including the size and sophistication of the employer and any efforts the employer made to comply with the applicable regulations. See Genao v. Blessed Sacrament Schl., 07 Civ. 3979 (CLP), 2009 WL 3171951, at *11 (E.D.N.Y. Oct. 1, 2009) (declining to award liquidated damages where defendant "at worst mistakenly believed that the School and Church were two separate employers, was not aware of the intricacies of the FLSA, [] relied on the accountant to review the parish records" and made good faith efforts to comply with the FLSA by paying the plaintiff overtime whenever he worked more than 40 hours a week for the Church). Here, Araujo and Macaire testified that at both Jubilee locations they relied on advice from payroll companies regarding compliance with federal and state wage-and-hour laws. (Araujo Dep. 59:24–60:4; Macaire Dep. 60:19–61:22.) Furthermore, Araujo testified that she took affirmative steps to comply with the law by informing all new employees that they would be paid at the tip credit rate. (Araujo Dep. 54:16–20.) At trial, defendants will have the opportunity to present additional evidence regarding their efforts to educate themselves on the applicable wage and hour regulations and any affirmative steps they took to comply with them. Accordingly, the plaintiffs' motion is DENIED.

### B.     NYLL Liquidated Damages

Similar to the federal scheme, the NYLL provides for the recovery of liquidated damages. See NYLL § 198(1–a). Before November 24, 2009, an employee was entitled to twenty-five percent liquidated damages if the employee could prove "that the employer's failure to pay the wage required was willful." NYLL § 198(1–a) (version effective before Nov. 23, 2009). The meaning of willfulness "[did] not appreciably differ from the FLSA's willfulness standard." Kuebel, 643 F.3d at 366.

Beginning November 24, 2009, employees were entitled to 25% liquidated damages award "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." 2009 N.Y. Laws ch. 372 § 1, amending NYLL § 198(1–a). In 2010, the NYLL was amended again to provide for 100% liquidated damages. This change went into effect on April 9, 2011, but only applies prospectively. See Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 144 (2d Cir. 2013). "Although the text of the NYLL's liquidated damages provisions does differ from that of the text of the FLSA's liquidated damages provision, 'courts have not substantially distinguished the federal standard from the current state standard of good faith." Garcia, 2015 WL 4940107, at *5 (citing Inclan, 95 F. Supp. 3d at 505).

The plaintiffs have moved for summary judgment on liquidated damages for violations of the NYLL only after November 23, 2009. As discussed above, defendants testified that they relied on advice from their payroll company regarding required compensation practices under state law. Additionally, Araujo testified that she verbally informed employees that they would be paid the minimum wage and that the restaurant was taking a tip credit. (Araujo Dep. 54: 16–20.) Defendants also listed "TIPS" and "CASH/CRTPS" on employees' paystubs, reflecting an attempt to comply with NYLL § 195(3). Because the standard applied to good faith under NYLL

is substantially the same as the standard applied under the FLSA, a triable issue of fact exists regarding whether the plaintiffs made good faith attempts to comply with the NYLL. The plaintiffs' motion for summary judgment on their entitlement to liquidated damages under the NYLL is therefore DENIED.

### C.    Stacked Liquidated Damages

Finally, plaintiffs argue that they are entitled to liquidated damages under both the FLSA and the NYLL. District courts are split on whether a plaintiff can recover liquidated damages under both federal and state law. Compare Paz v. Piedra, 09 Civ. 03977 (LAK)(GWG), 2012 WL 12518495, at *11 (S.D.N.Y. Jan. 12, 2012) (awarding liquidated damages only under the FLSA regime), with Tackie v. Keff Enters. LLC, 14 Civ. 2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) (holding that liquidated damages can be awarded under the FLSA and NYLL). "The majority view is that recovery under both statutes is permitted because they serve different purposes. Liquidated damages pursuant to the FLSA are considered compensatory rather than punitive in nature, whereas under the NYLL they constitute a penalty to deter an employer's willful withholding of wages due." Switzoor v. SCI Engr., P.C., 11 Civ. 9332 (RA), 2013 WL 4838826, at *5 (S.D.N.Y. Sept. 11, 2013) (citations and quotation marks omitted). Most courts have concluded that a plaintiff may recover liquidated damages under both the FLSA and NYLL. See Yu Y. Ho v. Sim Enters., Inc., 11 Civ. 2855 (PKC), 2014 WL 1998237, at *18–19 (S.D.N.Y. May 14, 2014); Gurung v. Malhotra, 851 F. Supp. 2d 583, 593–94 (S.D.N.Y. 2012); Jin M. Cao, 2010 WL 4159391, at *5; Yu G. Ke, 595 F. Supp. 2d at 261–62. This Court agrees that each form of liquidated damages serves a different purpose—the FLSA to compensate and NYLL to punish. Should the plaintiffs establish defendants' liability for liquidated damages, the Court will award such damages under both statutory schemes.

**CONCLUSION**

For these reasons, the Court GRANTS the plaintiffs' summary judgment motion in regard to (1) defendant Eric Macaire's status as an employer at both Jubilee locations; (2) defendant Ilda Araujo's status as an employer at Jubilee on First; (3) defendant Jubilee First Avenue Corp.'s liability as a successor entity of Jubilee, Inc.; (4) defendants' failure to comply with the notice requirements to entitle them to pay plaintiffs the tip credit wage; (5) defendants' failure to pay plaintiffs spread of hour wages; and (6) defendants' failure to provide wage notices as mandated by New York Labor Law § 195(3).

The Court DENIES the plaintiffs' motion for summary judgment in regard to (1) Araujo's status as an employer at Jubilee on 54th; (2) defendants' allegedly illegal retention of portions of the plaintiffs' tips at Jubilee on 54th; (3) plaintiff Franco's claim that defendants' failure to provide wage notices as required by New York Labor Law § 195(1); and (4) plaintiffs' entitlement to liquidated damages (except to find that the plaintiffs will be entitled to liquidated damages under both statutory regimes if they establish a right to liquidated damages at trial). The Court sua sponte grants summary judgment in favor of defendants on all other plaintiffs' New York Labor Law § 195(1) claims (excepting plaintiff Franco).

A conference to schedule final pre-trial filings and set a trial date is scheduled for Friday, September 9, 2016, at 11:30 a.m. in Courtroom 219, 40 Foley Square, New York, New York. If either party is not available on that date, they must contact Courtroom Deputy Joseph Mendieta immediately at (212) 805-0286.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     New York, New York
           August 25, 2016